## DYAL *v.* THE STATE.

There being no evidence in this case to authorize the conclusion that when the accused and the deceased came together it was then and there understood, either by word, act or deed, between the accused and his brother, who did the killing, that they would enter into a difficulty with the deceased for the purpose of taking his life, it was error for the court, in its charge to the jury, to give the State the benefit of any such hypothesis.

Argued February 21,—Decided March 1, 1898.

Indictment for murder. Before Judge Sweat. Appling superior court. September term, 1897.

*G. J. Holton & Son* and *T. A. Parker*, for plaintiff in error.

*J. M. Terrell*, attorney-general, *John W. Bennett*, solicitor-general, and *E. D. Graham*, contra.

Lewis, J. Kossuth Dyal and his brother John were indicted for the murder of William McEachin. John fled; and when Kossuth was first placed on trial, he was found guilty of voluntary manslaughter. This court gave him a new trial, upon the ground that the evidence did not authorize such a verdict, and the court erred in charging the law of voluntary manslaughter; that the offense, if anything, was murder. *Dyal v. State*, 97 *Ga.* 428. The evidence in the record before us now is substantially the same as it was then. There was much testimony in the case tending to establish a bad state of feeling between the Dyals and the McEachins, and that a feud had existed between them for a year before the homicide. Evi-

dence of frequent threats on both sides was introduced.   There
was much conflict in the testimony.   Upon the testimony illus-
trating the conduct of the accused and his brother prior to the
time of the difficulty, the State relied to establish the theory that
the homicide was the result of a previous conspiracy formed be-
tween the accused and his brother.  As to whether or not the
evidence was sufficient to establish this theory, we express no
opinion.   There was, however, no material conflict in the testi-
mony as to the manner and circumstances of the killing.   A
quarrel had taken place between Kossuth Dyal and William Mc-
Eachin.   It was agreed between them to "have a fair fight."
While William was in the act of pulling off his coat, having at
the same time a knife in his hand, Andrew, a brother of William,
stepped up to the accused with a Winchester rifle in his hands.
The accused, who was in his shirt sleeves and unarmed, then
turned from William and caught the barrel of the gun in the
hands of Andrew.   During the struggle over the gun John
with a double-barreled gun shot William in the back, killing
him instantly, and then fired the shot of the other barrel into
Andrew, who fell wounded.   The struggle continued over the
gun between the accused and Andrew, and as John stepped up
to strike Andrew with the gun, the accused asked him not to
do it.   By consent of Andrew and the accused a bystander took
the gun, which was the end of the difficulty.

From the decision of the court above cited, it appears that
the real issue between the parties then presented by the record
was whether or not the killing was in pursuance of a conspiracy
between the accused and his brother, entered into *previously* to
the difficulty in which the homicide occurred.   In his first
charge to the jury on the second trial of the case, the judge
fairly, fully and clearly gave the law bearing upon this issue as
authorized by the testimony that had been introduced both by
the State and the accused.   After being out fifteen hours, the
jury failed to reach a conclusion, and the judge again charged
them at length, still presenting to them the State's contention
of a previous conspiracy as the theory upon which it relied for
a conviction.   The jury having considered the case twelve
hours longer after this recharge, and failing to agree, requested

the court to charge them "again on the aiding and abetting, the taking part right at the time the killing was done"; whereupon, the judge delivered a third charge, and, among other things, instructed the jury as follows: "But there is also another theory on the part of the State in this case in reference to it, and that is, that whether or not there was understanding, agreement or arrangement at all between J. V. Dyal and Kossuth Dyal previously, that they were to meet there on the Saturday evening in question, for the purpose of having J. V. Dyal then and there to take the life of William McEachin, Kossuth Dyal to be present aiding and abetting in the act done; that whether or not it is true that there was any understanding between the Dyals for them to meet there that afternoon for that purpose, that as a matter of fact, when they came together there that afternoon, in view of the state of feeling existing previously between the Dyals and McEachins, that it then and there became understood, either by word, act or deed, between the Dyals, that they would enter into a difficulty with the McEachins for the purpose of taking the life of William McEachin, and that actuated by this common intent and purpose, that there was concert of action, in the difficulty which ensued, between the Dyals, each one performing his part, and with the intent and purpose common between them, that J. V. Dyal was to take the life of William McEachin, to kill and murder him, and that what was done between them was done with that end in view, and that end having been accomplished they would both be guilty of murder, one as principal in the first degree and the other as principal in the second degree." This was followed by a verdict of guilty with recommendation to mercy. The accused moved for a new trial, assigning error on the charge above quoted. There were other grounds in the motion, which are not necessary to be considered, except to say that, in the light of the explanations given by the judge in his certificate to same, no error appears.

Upon a careful and thorough examination of the voluminous brief of evidence in this case, we fail to find any testimony whatever authorizing the conclusion that there was at the time of, or immediately preceding, the homicide any un-

derstanding, "either by word, act or deed, between the Dyals, that they would enter into a difficulty with the McEachins for the purpose of taking the life of William McEachin." It does not even appear with any certainty whatever that the accused knew of the presence of his brother on that occasion until after the fatal shot was fired. Unless the evidence warranted the conclusion that the killing was the result of a conspiracy entered into between the accused and his brother at some time previous to this difficulty, there is absolutely nothing in the testimony to connect plaintiff in error with the perpetration of the crime for which he was indicted. A charge of the trial judge giving a party, even in a civil case, the benefit of a hypothesis not authorized by the testimony, is often reversible error. *McIntyre* v. *Meldrim,* 63 *Ga.* 59 (4); *Southwestern Railroad* v. *Singleton,* 67 *Ga.* 307 (4); *Bank of the University* v. *Tuck,* 96 *Ga.* 456 (2); *Davis* v. *Morgan,* 96 *Ga.* 518 (1). This rule should not be relaxed in a criminal case involving life and liberty, and more especially in this particular case where it seems that the jury were unable to agree upon a verdict until their minds were turned from the controlling issue to a theory of the case upon which a legal conviction could not be had. A new trial is therefore granted because of error in the charge of the court above set forth.

*Judgment reversed. - All the Justices concurring.*